IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN CAREY; JOSEPH BORDEN; and PEDRO ESPINOZA, each as an Individual, on his own behalf,<br><br>Plaintiffs,<br><br>v.<br><br>S.J. LOUIS CONSTRUCTION INC., a Minnesota Corporation, LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1-200, inclusive,<br><br>Defendants. | 2:10-cv-2017-GEB-GGH<br><br><u>ORDER DENYING MOTION TO REMAND</u>[*] |

On August 27, 2010, Plaintiffs Justin Carey and Joseph Borden filed a motion in which they seek to remand this case to the Sacramento County Superior Court in California from which it was removed. Defendant S.J. Louis Construction, Inc. ("S.J. Louis") opposes Plaintiffs' motion and Defendant Liberty Mutual Insurance Company ("Liberty Mutual") joins in S.J. Louis's opposition. Defendants argue diversity jurisdiction supports the removal of this case to federal court. For the reasons stated below, Plaintiffs' motion to remand will be DENIED.

///

///

---

[*] This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

## I. Background

On June 21, 2010, Plaintiffs filed a First Amended Complaint in the Sacramento County Superior Court, alleging six claims under state law. (First Am. Compl. ("FAC") ¶¶ 60-113.) Specifically, Plaintiffs allege: (1) failure to pay overtime wages in violation of California Labor Code section 1194 and illegal record keeping in violation of California Labor Code section 226; (2) failure to pay prevailing wages in violation of California Labor Code sections 1771 and 1774; (3) failure to pay for missed meal and rest breaks in violation of California Labor Code sections 226.7 and 512; (4) failure to timely pay wages due employees at termination in violation of California Labor Code sections 201-203; (5) recovery under public works payment bonds, California Civil Code section 3250; and (6) unfair business practices in violation of California Business and Professions Code sections 17200, *et seq.* Id.

On July 29, 2010, S.J. Louis filed a Notice of Removal, removing this case to federal court on the basis of diversity jurisdiction. (Notice of Removal "Removal" ¶ 5.) S.J Louis's Notice of Removal states that removal is proper since there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest. Id. ¶¶ 3-5.

## II. Legal Standards

**A. Removal**

A defendant may remove to federal court "any civil action brought in a State court of which the district courts . . . have original jurisdiction [.]" 28 U.S.C. § 1441(a). Removal, therefore, is only proper when a case originally filed in state court presents a

2

federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a). "The removal statute is strictly construed against removal jurisdiction [and] [t]he defendant bears the burden of establishing that removal is proper." Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009) (citations omitted). "Where doubt regarding the right to removal exists, a case should be remanded to state court." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003).

**B.  Diversity Jurisdiction**

Defendants argue removal is proper based upon diversity jurisdiction. (Removal ¶ 5.) Diversity jurisdiction "requires that the parties be in complete diversity and the amount in controversy exceed $75,000." Matheson, 319 F.3d at 1090; 28 U.S.C. § 1332(a)(1). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." Matheson, 319 F.3d at 1090.

For the purposes of sections 1332 and 1441, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). "The Supreme Court has recently clarified that the term 'principal place of business' means, for purposes of federal diversity jurisdiction, the locale where a 'corporation's high level officers direct, control, and coordinate the corporation's activities,' often called the 'nerve center.'" ProShipLine Inc. v. Aspen Infrastructures Ltd.,609 F.3d 960, 974 n.2 (9th Cir. 2010) (quoting Hertz Corp. v. Friend, --- U.S. ----, 130 S.

Ct. 1181, 1186 (2010)).  "And in practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Hertz Corp., 130 S. Ct. at 1192.  For diversity jurisdiction to exist in the instant case, none of the defendants can be a citizen of the same state as one of the plaintiffs. Since Plaintiffs are citizens of California, none of Defendants can be citizens of California.

### III. Discussion

Plaintiffs argue this action should be remanded to state court since Defendants failed to offer facts "to support the assertion that the principal place of business stated in the notice [of removal] is the corporate parties' principal place of business" and did not provide evidence "that the amount of damages to each plaintiff exceeds $75,000.00." (Mot. for Remand ("Mot.") 2:3-7.) Defendants respond, arguing diversity jurisdiction exists since the proffered evidence proves S.J. Louis's principal place of business is Rockville, Minnesota, and Liberty Mutual's principal place of business is Boston, Massachusetts because that is where each respective corporation's high level officers direct, control, and coordinate the corporations' activities. (S.J. Louis's Opp'n ("Opp'n") 1:7-11.) Defendants further argue that the amount in controversy exceeds $75,000 for both Carey and Borden and "[t]he Court can exercise supplemental jurisdiction over the entire matter as one of the Plaintiffs' claims has been properly removed pursuant to the Court's diversity jurisdiction." Id. 1:11-17.

///

### A. Complete Diversity

Plaintiffs argue that "Defendant(s) fail(s) to offer adequate facts to support the assertion that the principal place of business stated in the notice is the corporate party's principal place of business." (Mot. 4:17-19.) Defendants have attached the affidavit of James L. Schueller, President and Chief Operating Officer of S. J. Louis, and the declaration of James F. Kelleher, the Senior Vice President and Deputy General Counsel of Liberty Mutual Group, in support of their contention that S.J. Louis's principal place of business is Rockville, Minnesota, and Liberty Mutual's principal place of business is Boston, Massachusetts. (Scheueller Aff. ¶¶ 3-21; Kelleher Dec. ¶¶ 2-14.)

#### 1. S.J. Louis

Scheueller declares that S.J. Louis is a privately owned company which is incorporated in Minnesota. (Scheueller Aff. ¶ 3.) Scheueller also declares that the President of S.J. Louis is a resident and taxpayer of Minnesota. Id. Scheueller further declares that S.J. Louis's office, from which the President primarily manages the company, is located in Rockville, Minnesota. Id. ¶¶ 4-5. Scheueller also declares that "the direction, control and coordination of every aspect of S.J. Louis'[s] operation resides in the higher managing officers and managers of S.J. Louis, all of whom perform these activities in Rockville Minnesota." Id. ¶ 7. S.J. Louis's evidence is sufficient to show that its principal place of business is Rockville, Minnesota.

#### 2. Liberty Mutual

Kelleher declares that Liberty Mutual Group is the 100 percent parent of Liberty Mutual. (Kelleher Dec. ¶ 3.) Kelleher also declares that Liberty Mutual is incorporated in Massachusetts and its

headquarters is in Boston, Massachusetts. Id. ¶¶ 6-7. Kelleher further declares that the leadership of Liberty Mutual Group is located at the corporate headquarters in Boston and the core executive functions as well as the major administrative operations are carried out there. Id. ¶¶ 7-9. In addition, Kelleher declares Liberty Mutual's "core executive and major administrative functions are carried out in Boston, Massachusetts." Id. ¶ 10. Kelleher also declares that all of Liberty Mutual's corporate policies and operations are formulated and carried out in Boston and the initial and ultimate decisions concerning governance and oversight rests with the Board of Directors and high level officers that work out of and regularly meet in Boston. Id. ¶¶ 7-13. Kelleher avers that while Liberty Mutual "maintains several regional and local offices in California, it performs none of the core executive and administrative functions or major administrative operations . . . in California." Id. ¶ 14. Liberty Mutual's evidence is sufficient to show that its principal place of business is Boston, Massachusetts.

Since Plaintiffs are all residents of California, there is complete diversity. (FAC ¶ 9, 19, 26.)

**B. Amount in Controversy**

Plaintiffs also argue that Defendants have not proven that the claims for each Plaintiff exceeds $75,000. (Mot. 5:19-21.) Defendants respond that "Plaintiffs' claims in this case are sufficient to meet the amount in controversy requirement, particularly when considering permissible statutory attorneys' fees." (Opp'n 11:14-15.) Defendants have attached an affidavit from Donald B. Meyer, the Vice President of S.J. Louis, a declaration from Jamie L. Woods, the Assistant Controller of S.J. Louis, and the payroll records of all three Plaintiffs, as

support of their amount in controversy arguments. (Meyer Aff. ¶ 1, Ex. A-C, Woods Decl. ¶ 1.)

### 1. Carey's claims

Defendants argue the amount in controversy with respect to Carey's claims easily exceeds $75,000.(Opp'n 11:27-28.) Carey filed an untimely stop notice on which he could not collect; the notice is attached to the FAC as support for his claim. (FAC ¶ 15, Ex. A.) Carey requested $58,594.33 in the stop notice for labor, the "nonpayment of the appropriate wages[.]" Id. The first two claims allege Defendants failed to pay Plaintiffs the minimum required hourly rate and overtime compensation. Id. ¶¶ 60-79.

Defendants argue that the maximum penalty for the wage statement violations, also alleged in Plaintiffs' first claim, is $4,000. (Opp'n 12:4.) Under California Labor Code section 226(e),

> An employee . . . is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Defendants argue each week Plaintiffs worked constituted a separate pay period. (Opp'n 5:17.) Meyer declares that Carey received pay for a total of seventy nine pay periods. (Meyer Aff. ¶¶ 2-3, Ex. A.) To reach the maximum penalty for wage statement violations, an employee would only need to have worked forty one pay periods.

Defendants estimate Carey's damages for the failure to pay wages of terminated or resigned employees ("waiting time violations") alleged in Plaintiffs' fourth claim are approximately $12,991.20, $54.13 multiplied by eight hours per day for thirty days. (Opp'n 5:7.) California Labor Code sections 201 and 202 require employers to pay

their employees all wages due within seventy two hours of termination. If an employer willfully fails to timely pay such wages, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). Meyer declares that the payroll records show Carey earned $54.13 per hour at the time of termination. (Meyer Aff. Ex. A.) Plaintiffs allege in the FAC that "[m]ore than 30 days have passed since Plaintiffs have left Defendants' employ." (FAC ¶ 92.)

Defendants argue that with just these claims, the amount in controversy concerning Carey's damages is $75,585.53, exclusive of statutory attorneys' fees, meal period or rest break penalties, punitive damages, or the value of injunctive relief. (Opp'n 12:2-8; Meyer Aff. ¶¶ 2-3, Ex. A; Woods Decl. ¶¶ 1-7; FAC ¶¶ 59, 70, 76-79, 87-88, 93, 101, Ex. A.) Plaintiff Carey's evidence is sufficient to show that his claims exceed $75,000 in controversy jurisdiction amount.

**2. Borden and Espinoza's respective claims**

Defendants argue Borden and Espinoza assert similar claims to Carey, and therefore, their claims should be valued similarly to Carey's. (Opp'n 7:24-8:2.) Defendants argue in the alternative that the Court should exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) over these claims since Carey's claims exceed the jurisdictional limit and complete diversity is present. Id. 8:2-4.

In an action involving multiple plaintiffs, a federal court may exercise supplemental jurisdiction over a co-plaintiff's claims that fail to meet the jurisdictional amount in controversy if (1) at least one plaintiff satisfies the amount in controversy, (2) the other elements of diversity jurisdiction are satisfied, and (3) the

plaintiff's claims are part of the same "case or controversy." See <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 549 (2005) ("We hold that, where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction.") In order to determine whether the claims are part of the same case or controversy, the Court examines whether the claims involve a "common nucleus of operative fact." See <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966) (requiring a "common nucleus of operative fact" to confer supplemental jurisdiction over pendant state law claims).

Espinoza and Borden allege claims arising from the same violations of law as Carey. All three Plaintiffs worked for S.J. Louis on the "Folsum south Canal Connection Project." (FAC ¶¶ 10, 20, 27.) Since Espinoza and Borden's respective claims are part of the same case or controversy involved with Carey's claims, supplemental jurisdiction is exercised over Espinoza and Borden's respective claims.

## IV. <u>Conclusion</u>

For the stated reasons, Plaintiffs' motion to remand is DENIED.

Dated: September 29, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge